IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

    v.                                      Cr No. 16-02376 WJ

**TOM BEGAYE JR.**,

        Defendant.

UNITED STATES' SENTENCING MEMORANDUM

The Defendant is a sexual predator and child murderer.   He stands before this Court to face sentencing for an act of vile human depravity that left a little girl raped and murdered, her brother scarred for the remainder of his life, a family emotionally damaged, and a people shaken to its core.   His heinous and depraved acts are the foundation from which only nightmares come. Yet here that nightmare became reality—from preying upon children returning home from school, to luring Ashlynne and Ian Mike[1] into his van, to driving them to a remote outpost of the Navajo Nation, to hiding a tire iron under his jacket while he marched an 11-year-old Ashlynne to do unthinkable things, to brutally raping her, to bludgeoning her with that tire iron as she pleaded with him to stop, to letting her die in the desert, and to abandoning a 9-year-old boy miles from the nearest person who could help him—and for that the Defendant is deserving of the stiffest sentence the law allows.   If ever a man was deserving of the life sentence, it is Tom Begaye, Jr.   The United States urges the Court, in no uncertain terms, to impose the only sentence that is just, the only sentence that is fair, the only sentence that comports with any

---

[1] The United States received express permission from the children's' parents to utilize the children's names.   Both parents actively advocate for the safety and welfare of children, victims of sexual violence, and the families of homicide on behalf of and in the names of both Ashlynne and Ian.

moral sense of right and wrong, and the only sentence that will ensure that the defendant does

not inevitably harm another innocent child: life imprisonment with no possibility of release.

### Procedural History

On May 24, 2016, a federal Grand Jury returned a six-count Indictment against the

Defendant Tom Begaye, Jr.   Doc. 11.   On August 1, 2017, pursuant to a plea agreement with

the United States, the Defendant pled guilty to the entire indictment, which included the

following charges:   Count 1: First Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111;

Count 2: First Degree Murder (Felony Murder), in violation of 18 U.S.C. §§ 11153 and 1111;

Count 3: Kidnapping a Minor Resulting in Death, in violation of 18 U.S.C. §§ 1153, 1201(a)(2)

and 1201(g); Count 4: Aggravated Sexual Abuse Resulting in Death, in violation 18 U.S.C. §§

1153, 2241(c), 2246(2)(C) and 2245; Count 5: Aggravated Sexual Abuse Resulting in Death, in

violation of 1153, 2241(c), 2246(2)(A)[2] and 2245; and Count 6: Kidnapping of a Minor, in

violation of 18 U.S.C. §§ 1153, 1201(a)(2) and 1201(g) (pertaining to Ian Mike).   Doc. 47.   The

parties' agreement specifies that a sentence of life without the possibility of release for each

count of conviction is the appropriate sentence in this case.   Doc. 47, PSR ¶ 3.   The sentences

for Counts 1 through 6 shall be served concurrently.   *Id.*   The parties further agree that no term

of supervised release will follow the term of imprisonment.   *Id.*

### The Presentence Report

As an initial matter, the United States does not have any factual objections to the

Presentence Report re-disclosed on September 12, 2017.   Doc. 53.   The United States agrees

---

[2] Upon motion of the United States, an Order amending a clerical error in the Indictment and Plea was entered on October 17, 2017, listing the correct citation for Count 5:   Aggravated Sexual Abuse, as being in violation of 18 U.S.C. §§ 1153, 2241(c), 2246**(A)**, and 2245.   Doc. 57.

that Counts 1, 2, 3, 4 and 5 are grouped for guideline calculation purposes.   PSR ¶ 38.   The

base offense level for the resulting Group 1 is 38.   PSR ¶ 39.   A four-level increase results for

the use of force as a specific offense characteristic.   PSR ¶ 40.   Another four-level increase is

appropriate where the victim sustains life-threatening injury that ultimately caused death.   PSR ¶

41.   An additional four-level increase is added because Ashlynne was abducted.   PSR ¶ 42.

The adjusted offense level is 50.   PSR ¶ 46.   Count 6 does not group with the first five charges

because it involves a separate victim.   The offense level computation for Count 6 is correctly

calculated at 32.   PSR ¶¶ 47, 52.   The combined adjusted offense level, after both groups are

assessed, is 50.   PSR ¶ 56.   Finally, evidence revealed that the Defendant engaged in a pattern

of activity involving prohibited sexual conduct.   PSR ¶¶ 57, 72, 77.   Specifically, a five-level

increase is appropriate based upon two prior instances of prohibited sexual conduct addressed in

the PSR—that is, a 2006 arrest for sexual assault for which no disposition is available and a

report of an offense from Utah involving the fondling of a child, also for which no disposition is

available.   PSR ¶¶ 72, 77.   An enhancement of five points results in an offense level of 55.

PSR ¶ 57.

The United States agrees that there are factors which could warrant an upward departure,

including extreme psychological injury and extreme conduct.   PSR ¶¶ 123-124.   However, the

parties have stipulated to a sentence of life, without release.   The United States, therefore, is not

seeking any upward departures.   *Id*.   Most notably, an upward departure would not result in a

sentence greater than the sentence agreed to by the parties, that is, a term of life imprisonment

without release.

The Defendant has accepted responsibility and assisted the United States in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a guilty plea.   As a result, the defendant's offense level is decreased by three levels.   PSR ¶¶ 58-59.   Finally, pursuant to Chapter 5, Part A (comment n.2) of the Sentencing Guidelines, in those rare instances where the total offense level is calculated in excess of 43, the offense level is treated as a level 43.   PSR ¶ 60.   The Defendant's final adjusted offense level is therefore, 43.   *Id.*

In reviewing the Defendant's criminal history, the United States agrees that his criminal history score is two establishing a criminal history category of II.   PSR ¶ 65-66.   A criminal history category of II and a total offense level of 43 results in a guideline imprisonment range of life.   PSR ¶ 105.

The United States also agrees with the statutory terms of imprisonment set forth in the PSR.   By statute, Counts 1 through 3 each require a term of imprisonment of life without release.   PSR ¶ 104.   Counts 4 and 5, by statute, require a maximum term of imprisonment of life.   *Id.*   Count 6 requires a minimum term of imprisonment of 20 years imprisonment, up to a maximum term of life.   *Id.*   Pursuant to the plea agreement, the parties have stipulated that a specific sentence of life without the possibility of release is the appropriate sentence for each count of conviction in this case.   PSR ¶ 106.

As to supervised release, the United States agrees with United States Probation's analysis of the terms of supervised release required by statute.   Although Count 6 provides for a guideline range of supervised release between two and five years, because Counts 1 through 5

require mandatory life in prison, there is no supervised release to follow the sentence in this case. PSR ¶¶ 108, 110.

The United States is not requesting that a fine be imposed in this matter

The United States also agrees with United States Probation's analysis of the special penalties applicable to each of the counts.   PSR ¶ 116.   As to Counts 4 and 5, pursuant to the Victims of Trafficking Act, there is a potential additional special penalty assessment of $5000. PSR ¶ 116.   Such an assessment is applicable to distinct classes of offenses committed after May 29, 2015, including sexual abuse, presuming the Court finds the defendant is non-indigent. *Id*.   Here, the United States agrees that the Defendant is indigent.   Therefore, it is not requesting that the Court impose the $5000 special penalty assessment for Counts 4 and 5.   The United States does request, however, that the Defendant be assessed the standard mandatory $100 special penalty assessment for each count of conviction for a total of $600.

Finally, the family is not requesting restitution.   PSR ¶¶ 119, 120.

### The Facts and 18 U.S.C. § 3553(a)

Beyond the guideline analysis, fashioning the correct sentence requires this Court to additionally consider the factors set forth in 18 U.S.C. § 3553(a).   Under that framework, an appropriate sentence is one that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant and provides the defendant with needed educational or vocational training, medical care or other correctional treatment.   Applied here, only a life sentence will vindicate the full panoply of Section 3553 factors that this Court must consider.   In reaching that conclusion, the United States relies primarily on the gut-wrenching facts of the

crime to make the case that a life sentence is the only appropriate punishment.   By now, the

Court is well aware of what this Defendant did: on May 2, 2016, 11-year-old Ashlynne Mike and

her 9-year-old brother Ian Mike stepped off their school bus, less than a quarter mile from their

home in Fruitland, NM.   PSR ¶ 11.   The two shared their last carefree moments playing

together alongside friends near an irrigation canal.   Their older sister, G.M., directed the

children to walk home, but the children delayed.   PSR ¶ 11.   As she walked away, the

Defendant, Tom Begaye Jr., offered G.M. a ride in his van.   She declined.   The Defendant then

drove toward the area where Ashlynne, Ian, and the other children were playing.   PSR ¶ 13.   As

Ashlynne and Ian began their walk home, the Defendant, a man the children had never before

met, drove up and offered them a ride.   PSR ¶ 17.   The innocent children, oblivious to the

Defendant's secret machinations and purpose, accepted the offer.

Assuring his privacy, the Defendant then drove the children to a remote area near the

Shiprock Monument within the Navajo Nation.   Doc. 47, ¶ 9.   He led Ashlynne away and out of

the sight of her brother.   *Id.*   Ian remained inside the Defendant's van, scared and unaware of

the horror that was about to occur.   *Id.*   Having marched Ashlynne away from the van, the

Defendant proceeded to brutally sexually assault her by digitally penetrating her vagina and by

vaginal and anal penetration with his penis.   *Id.*

When raping the little girl, the Defendant knew full well that he would kill her when he

was done.   After parking the van with Ian still inside, but before marching Ashlynne to the area

where she would take her last breaths, the Defendant removed the eventual murder weapon, a

tire iron, from the back of his van and hid it beneath his jacket.   Later, when the Defendant was

6

speaking to law enforcement about why he killed her, he simply stated that he did not want her to tell.

With all of that going through his head, and having completed his violent sexual assault of Ashlynne, the Defendant strangled her with his bare hands and repeatedly beat her with a tire iron. *Id.* Ashlynne died of blunt force trauma and asphyxia injuries. *Id.* He then haphazardly redressed Ashlynne and walked back to his van. *Id.*

When the Defendant approached his van, he found Ian still inside. The Defendant attempted to hide the tire iron he used to strike and kill Ashlynne beneath his jacket. PSR ¶ 19. After placing the tire iron in the back of his vehicle, the Defendant then instructed Ian to get out of the vehicle. PSR ¶ 24. He drove away, leaving Ian alone to search aimlessly for his sister. *Id.* As night fell, Ian was unable to locate Ashlynne. *Id.* He walked toward a more traveled roadway and a couple stopped to assist him. PSR ¶ 16. Ian was exhausted and distraught. *Id.* The couple drove Ian to the nearest police station. *Id.* Once in the presence of law enforcement, Ian began slowly unraveling and recounting the events he had witnessed. PSR ¶¶ 16-19, 23, 24. In the dark of night, he tried to help law enforcement locate the site where the Defendant drove him and his sister and where he last saw Ashlynne. PSR ¶ 18.

On May 3, 2016, following an extensive law enforcement search and with the assistance of many community volunteers, Ashlynne's remains were located approximately seven miles south of the Shiprock Monument. PSR ¶¶ 19, 20. The Mike family, the Navajo Nation, and the greater community at large began to mourn the loss of Ashlynne.

During the August 1, 2017 plea colloquy, this Court heard the Defendant's admissions and accepted his plea pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

7

The investigation revealed, and the Defendant confirmed, the atrocious and shocking acts that he

committed against an 11-year-old child.   It is the rare occasion when a defendant's applicable

sentencing guideline range, statutory penalty, and agreed-upon sentence coincide exactly.   Here,

each guidepost provides this Court assurance that a life sentence is the appropriate punishment

for the Defendant's crimes.   Overlaying the factors of Section 3553(a) does not change the

calculus and instead, supports it.   The United States respectfully requests that the Court act as

the final arbiter and impose a sentence, pursuant to the parties' agreement, requiring that Tom

Begaye Jr. serve six life sentences, to run concurrently, without the possibility of release.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

*Electronically filed on October 17, 2017*
NIKI TAPIA-BRITO
JENNIFER M. ROZZONI
Assistant United States Attorney
PO Box 607
Albuquerque, NM 87103
(505) 346-7274

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to opposing counsel of record.

*Filed Electronically on October 17, 2017*
Niki Tapia-Brito
Assistant United States Attorney

8